Jahan Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
Molly Frandsen (Cal. Bar No. 320094)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA  94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: jsagafi@outtengolden.com
E-Mail: rsun@outtengolden.com
E-Mail: mfrandsen@outtengolden.com

Steven M. Tindall (Cal. Bar No. 187862)
Aaron Blumenthal (Cal. Bar No. 310605)
Nikul Shah (Cal. Bar No. 321282)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: 510-350-9700
Fascimile: 510-350-9701
E-Mail: smt@classlawgroup.com
E-Mail: ab@classlawgroup.com
E-Mail: ns@classlawgroup.com

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Clifford Linn, Baxter Gipson, John Gregorio, Plaintiffs, v. DoorDash, Inc., Defendant. | Case No. 20-cv-00666 **CLASS ACTION COMPLAINT** <u>DEMAND FOR JURY TRIAL</u> |

**INTRODUCTION**

1. Defendant DoorDash, Inc., has misclassified most of its workforce as "independent contractors."

2. The "basic objective" of employment laws is to ensure that workers with "less bargaining power than a hiring business" are not forced to "accept work for substandard wages" in order to survive. *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903, 956-57 (2018). Minimum wage laws, for example, are designed to ensure workers the "minimal wages" that enable them to "obtain a subsistence standard of living." *Id.* Similarly, overtime protections exist to provide an incentive for employers to cap the workweek at 40 hours per week, both to spread employment and to ensure that workers' health and welfare do not suffer from overlong work schedules.

3. Even though federal, California, Illinois, and Massachusetts law require DoorDash drivers to be classified as "employees" and receive the rights and protections employees get, DoorDash continues to willfully misclassify them as independent contractors, to reap the benefit of their work and maximize its profit.

4. DoorDash's misclassification of its workforce causes many harms to Plaintiffs and their fellow "Dashers" (the term DoorDash uses for its delivery drivers). This misclassification depresses Dashers' wages, forcing many to work multiple jobs to make ends meet. Almost 80% of Americans now live paycheck to paycheck, a trend that UC Berkeley economist Robert Reich blames on "[t]he rise of 'independent contractors,'" which he calls "the most significant legal trend in the American workforce – contributing directly to low pay, irregular hours, and job insecurity."

5. As "employees," Plaintiffs are entitled to all the benefits and protections afforded by federal and state labor law—including minimum wage and reimbursement of business expenses.

6. Plaintiffs now bring this action, on behalf of themselves and their fellow Dashers, to recover from DoorDash what they are rightfully owed as "employees."

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over the causes of action asserted herein under 28 U.S.C. §

1332(d)(2) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 members in the proposed class; and at least one member of the class of Plaintiffs is a citizen of a state different from the Defendant. The Court also has jurisdiction under 28 U.S.C. § 1332(a) because a Plaintiff is a citizen of a different state from the Defendant and the amount in controversy exceeds the value of $75,000. Additionally, the Court has jurisdiction under 28 U.S.C. § 1331 because this civil action asserts claims under federal law for violations of the Fair Labor Standards Act.

8. This Court has personal jurisdiction over Defendant DoorDash, Inc, because it is headquartered in California, does business in California, and transactions or events giving rise to claims herein occurred in California.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in, were directed to, and/or emanated from this District.

## INTRADISTRICT ASSIGNMENT

10. Pursuant to N.D. Cal. Local Rules 3-2(c) and (d), intradistrict assignment to the San Francisco/Oakland Division is proper because DoorDash's principal place of business is in San Francisco, California, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred there.

## PARTIES

**I.    Plaintiffs**

11. Plaintiff Clifford Linn is a resident and citizen of California. He resides in Santa Maria, California.

12. Since April 2019, he has worked as a delivery driver for DoorDash in California.

13. As permitted by his contract with DoorDash, he notified DoorDash by mail on November 12, 2019, December 20, 2019, and January 6, 2020, that he was opting out of DoorDash's arbitration clause.

14. Plaintiff Baxter Gipson is a resident and citizen of Illinois. He resides in Bensenville, Illinois.

15. Since August 2017, he has worked as a delivery driver for DoorDash in Illinois.

16. As permitted by his contract with DoorDash, he notified DoorDash by mail on November 22, 2019, December 10, 2019, and January 6, 2020, that he was opting out of DoorDash's arbitration clause.

17. Plaintiff John Gregorio is a resident and citizen of Massachusetts. He resides in New Bedford, Massachusetts.

18. Since September 2018, he has worked as a delivery driver for DoorDash in Massachusetts.

19. As permitted by his contract with DoorDash, he notified DoorDash by mail on December 9, 2019, December 10, 2019, and January 6, 2020, that he was opting out of DoorDash's arbitration clause.

20. Contemporaneously with the filing of this complaint, Plaintiff John Gregorio filed a complaint with the Massachusetts Attorney General's office concerning the violations of Massachusetts law alleged herein.

**II.**     **Defendant**

21. DoorDash, Inc., is incorporated under Delaware law and is headquartered at 901 Market St. Ste 600, San Francisco, CA 94103.


**FACTUAL ALLEGATIONS**

**I.**     **DoorDash's Business Uses Dashers to Deliver Food.**

22. DoorDash provides its customers with an on-demand food delivery service through its mobile phone application (the "DoorDash App"). Customers can use the DoorDash App to order food from various restaurants.

23. To deliver this food to its customers, DoorDash maintains a workforce of over 300,000 delivery drivers.

24. Applicants for a delivery driver position at DoorDash must pass a background and vehicle check. If approved, drivers must download DoorDash's companion application for its delivery drivers, the "Dasher App." DoorDash uses the term "Dasher" to refer to its drivers.

25. Through the Dasher App, DoorDash assign orders to its drivers.

26. When they are ready to begin their shift, drivers must click a button in the Dasher App indicating that they are ready to deliver orders.

27. When filling a typical order, drivers must drive to the assigned restaurant; find a parking spot; notify DoorDash that they have arrived; pick up the food if it's ready or wait to pick it up until the restaurant finishes preparing it; pay for the food using a special credit card provided by DoorDash (the "Red Card"); notify DoorDash that they have picked up the food; drive to the customer's location; find a parking spot; follow any specific delivery instructions provided by DoorDash; deliver the food to the customer; and notify DoorDash that the food has been delivered.

28. Drivers who fail to follow DoorDash's precise instructions can be terminated.

**II.     DoorDash Uses "Metrics" to Control How Drivers Perform the Work.**

29. DoorDash measures drivers on four "metrics": (1) "On Time" Deliveries – that is, the percentage of orders that were delivered on or before the delivery time provided to the customer; (2) Average Customer Rating – a rating of the Dasher's performance from 1 to 5 stars, which customers fill out after receiving their orders, (3) Completion Rate – percentage of orders that were successfully delivered; and (4) Acceptance Rate – percentage of order opportunities that the Dasher accepts.

30. Dashers often worry about their metrics, because low metrics can harm their opportunities to earn money and can be grounds for termination

31. Dashers with low metrics are terminated. For example, DoorDash bans drivers from the Dasher App if the driver's Average Customer Rating falls below 4.2 stars.

32. These star ratings are used primarily for punishment. Customers cannot use the ratings to select which driver they want.

33. The metrics also affect the quality of assignments that Dashers are eligible to receive. For example, Dashers with low metrics are generally not eligible to receive "Drive" orders, which typically consist of large catering orders or grocery deliveries.

### III.   DoorDash Imposes Strict Delivery Requirements on Drivers.

34. DoorDash drivers must deliver the food on a tight delivery schedule or face consequences.

35. For each delivery, DoorDash provides the customer with the exact time that the Dasher is expected to arrive at the restaurant and the exact time the Dasher should arrive at the customer's location. DoorDash also provides the customer with a map showing the Dasher's precise location at every moment.

36. When a Dasher falls even slightly behind schedule, they not only hurt their "On Time" Delivery statistics, but they also risk receiving a bad customer rating. Customers will often leave a 1-star rating if an order is late, even if the tardiness is not the driver's fault. Customers generally cannot distinguish between delays caused by the driver, the restaurant, or DoorDash itself.

37. Dashers can hurt their "metrics" not only by delivering too slowly, but also by trying to accept only plum assignments.

38. When DoorDash assigns an order to a Dasher, the Dasher has a brief period during which they can decline the order. DoorDash provides Dashers with an estimate of the amount of money they can receive and the driving distance.

39. Dashers who try to accept only high-paying or low-distance orders face termination. According to DoorDash's "Deactivation Policy," drivers with an "extremely low" Acceptance Rate may be terminated (without defining "extremely low").

40. DoorDash also makes drivers ineligible for incentive pay if their Acceptance Rate is too low. For example, Dashers cannot receive "Peak Pay" (a bonus for delivering orders during periods of high demand) if they maintain too low an Acceptance Rate.

### IV.   DoorDash Keeps Tips Left for Drivers

41. Under the compensation system in place before August 2019, DoorDash typically used tips that customers left for drivers to pay its own costs, rather than to increase driver's total compensation.

42. When DoorDash offered an order to a driver, the Dasher App would display a

guaranteed minimum amount that the driver would earn if they accepted the order. DoorDash guaranteed to pay this amount from its own coffers.

43. Unbeknownst to many drivers, if they later received a tip, the tip would typically not increase their take-home pay beyond this guaranteed amount. Buried in the "Help" section of its website, DoorDash explained that drivers were entitled to *either* the guaranteed amount *or* 100% of their tips (plus $1 in base pay from DoorDash), but not both. The Dasher would receive whichever amount was larger.

44. Take, for example, an order for which DoorDash guaranteed at least $5. Whether the customer left no tip, a $1 tip, $2 tip, or $3 tip, DoorDash would pay the Dasher $5. In contrast, if the customer left, for example, a $7 tip, DoorDash would give the Dasher the full tip ($7) and one additional dollar ($1) of base pay from DoorDash. The Dasher would either be paid based on tips or based on the guaranteed minimum, but not both.

45. In July 2019, faced with a media storm of angry drivers and "upset customers, who wanted their tips to serve as a bonus for workers rather than subsidizing DoorDash's operations," DoorDash agreed to change its compensation model (starting in August 2019), so that Dashers always received their tips.[1]

## V.    **DoorDash Drivers Are "Employees"**

46. Companies like DoorDash were never supposed to be allowed to run an entire business on the backs of independent contractors. People who work in the company's core line of business are its "employees." *United States v. Silk*, 331 U.S. 704, 718 (1947).

47. DoorDash claims an unprecedented portion of its workforce as "independent contractors,"[2] and only classifies about 2.5% of its workforce as "employees." These workers, many of whom are computer programmers, receive special treatment from DoorDash. But the delivery drivers, who make up the bulk of DoorDash's workforce, are denied even the most basic protections of federal and state labor laws. DoorDash does not pay them minimum wage; it does not pay overtime; and it does not reimburse business expenses, such as gasoline and car

---

[1] Danielle Abril, *DoorDash's New Tipping Policy Has Increased Driver Pay*, Fortune (Nov. 12, 2019), https://fortune.com/2019/11/12/doordash-new-tipping-policy-worker-pay/.
[2] Keith Cunningham-Parmeter, *From Amazon to Uber: Defining Employment in the Modern Economy*, 96 B.U. L. Rev. 1673, 1683–84 (2016).

maintenance. Its classification of its drivers also deprives them of basic protections against discrimination and sexual harassment.[3]

48. By design, "independent contractors" are exempted from "nearly every" labor law, but this classification was not meant to be a loophole for companies like DoorDash.[4] As an article in the *Boston University Law Review* explains, "Historically, firms reserved the independent contractor designation for entrepreneurial individuals whose skills demanded higher pay in the open market."[5] With this in mind, "[l]egislatures rationalized excluding [independent contractors] from most employment laws because these individuals did not require the same legal protections as potentially more vulnerable, less-skilled 'employees.'"[6]

49. Today, DoorDash preys upon the many of the most vulnerable members of our society. Some DoorDash drivers earn as little as $4.50 per hour, after accounting for mileage costs. These are the precise individuals that legislatures meant to protect with minimum wage and other workplace protections.

50. In recent years, state legislatures have taken action to send a clear message that most workers should be "employees."

51. California, Illinois, and Massachusetts have all adopted an "ABC test" to determine whether a company, like DoorDash, has misclassified its workers as "independent contractors." Because employee status was meant to be the default, the ABC test "presumptively considers all workers to be employees and permits workers to be classified as independent contractors only if the hiring business demonstrates that the worker in question satisfies *each* of three conditions:

> (A)   that the worker is free from the control and direction of the hirer in connection with the performance of the work… *and*
>
> (B)   that the worker performs work that is outside the usual course of the hiring entity's business; *and*
>
> (C)   that the worker is customarily engaged in an independently established … business of the same nature as that involved in the work performed."

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*

*Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903, 956-57 (2018) (emphasis in original).

## A.    Dashers Are Not Free from DoorDash's Control.

52. DoorDash maintains uniform policies and terms of service with which all Dashers must comply. Failure to comply can result in immediate deactivation from the Dasher App.

53. DoorDash assigns orders to its drivers on a take-it-or-leave-it basis. Drivers are not given a list of available orders from which to choose.

54. DoorDash unilaterally determines how much to pay Dashers for each delivery. Dashers have no ability to set their own rates.

55. Before they accept an order, Dashers are not told how long they will have to wait at the restaurant, even though DoorDash has already calculated a "food prep duration" for the order (based on historical data for that restaurant).[7]

56. If a Dasher declines an order, they don't know if they will receive another. But they *do* know they will suffer consequences. If a Dasher tries to decline an order, the app says, "Are you sure you want to decline this order?," and warns them about the consequences of doing so.

57. Dashers who decline orders face the loss of incentive pay and other delivery opportunities. Dashers who decline too many orders face termination.

58. During the course of a delivery, Dashers must follow all instructions in the Dasher App, including specific instructions for picking up the food, paying for it, and delivering it to the customer. They have no freedom to deviate.

59. DoorDash enforces a strict delivery schedule. Failure to deliver an order by the specified time will hurt Dashers' "metrics."

60. DoorDash scrutinizes drivers' "metrics" and takes away opportunities or terminates drivers whose "metrics" fall too low.

61. DoorDash uses these "metrics" as a means to exert its control over drivers.

62. DoorDash has the power to discipline drivers, including by denying them access to

---

[7] Raghav Ramesh (Machine Learning Engineer at DoorDash), *How DoorDash Leverages AI in its on-demand Logistics Engine* (May 2018), at 18.

certain types of work.  And DoorDash has the power to shut down drivers' access to the Dasher App for myriad reasons, thus preventing them from obtaining and responding to delivery requests.

**B.    Dashers' Work Is Not Outside DoorDash's "Usual Course of Business."**

63. DoorDash's usual course of business is food delivery.  DoorDash markets itself as a food delivery service. DoorDash's home page is titled "DoorDash Food Delivery," and its homepage's description – which appears in search results – says, "Get breakfast, lunch, dinner and more delivered from your favorite restaurants right to your doorstep with one easy click." DoorDash wants people to think of it as a delivery service.

64. Dashers are central to DoorDash's business.  Dashers provide the service that DoorDash sells to the public.  DoorDash earns money by providing its customers with food delivery – a service that is wholly dependent on Dashers.  DoorDash has created a fully integrated solution through which customers can order directly from the restaurant and have their order delivered for a specified delivery fee. Customers cannot select their Dasher (for example, based on their ratings, qualities, experience, or other factors).  And Dashers cannot select their desired customers (for example, based on how much the customer is willing to pay or the distance to the customer's location).

65. To determine DoorDash's "usual course of business," there are no material issues of fact to be resolved. As a result, Plaintiffs are entitled to judgment as a matter of law.

**C.    DoorDash Cannot Meet Its Burden to Show that Dashers Are "Customarily Engaged" in a Separate Delivery Business.**

66. Dashers lack business autonomy.  Dashers are not engaged in an independently established business. Dashers cannot provide DoorDash delivery services without the DoorDash App.  Dashers are dependent on DoorDash to identify deliveries and customers for them.

67. Dashers cannot advertise any product offering to customers or compete for customers' business. Customers cannot even select their driver. DoorDash does not, for example, provide customers with a list of available drivers and allow customers to choose a driver based on job qualifications, star ratings, delivery speed, or other metrics.

68. In fact, DoorDash impedes customers' and drivers' ability to contract directly with each other. During a delivery, DoorDash obscures the customer's and Dasher's full name and contact information.  A customer cannot place a favored driver on retainer. And Dashers cannot solicit repeat business from well-paying customers.

69. Dashers are not engaged in a specialized delivery trade. Dashers do not need to possess any particular skills other than those required to obtain a driver's license.

70. DoorDash does not verify, when Dashers apply for the job, that they operate a separate delivery business. Plaintiff does not operate a separate delivery business.

71. DoorDash requires Dashers to apply for the job using their name and Social Security number.  There is no option for Dashers to contract with DoorDash via a business entity owned by the Dasher. Dashers may not hire their own employees to assist them in providing services for DoorDash.

72. By working for DoorDash, Dashers have not independently made the decision to go into business for themselves.  DoorDash has unilaterally dictated that Dashers are independent contractors while precluding them from taking the usual steps toward promoting and establishing an independent business, such as forming business relationships with DoorDash customers or otherwise promoting their services to the public.

## VI.  <u>Misclassification of DoorDash Drivers Creates Substantial Harm.</u>

73. For the reasons stated above, DoorDash cannot meet its burden to prove that Plaintiffs and Class members were properly classified as independent contractors, as opposed to employees.

74. Plaintiffs and Class members are – and always have been – entitled to the protections of federal and their state's labor laws.

75. DoorDash's misclassification harms not only its drivers, but also other workers in the gig economy who are similarly misclassified, workers generally, and the public.

76. DoorDash's misclassification harmed Plaintiffs and Class members by depriving them of the rights, benefits, and protections that they are entitled to as employees of DoorDash. DoorDash does not pay them the normal amounts payable to employees, such as minimum wage

and reimbursements for gas, mileage, insurance, and other necessary costs related to making deliveries for DoorDash.  Plaintiffs and Class members spend considerable time braving dangerous traffic conditions to deliver food to DoorDash customers as quickly as possible, delivery after delivery, day after day.  This is highly lucrative work for DoorDash but perilous for Dashers.  A substantial percentage of delivery personnel have been physically injured on the job, and at least four have been killed performing delivery work for DoorDash and similar companies. DoorDash's misclassification of Plaintiffs and Class members deprives them of any right to workers compensation insurance and paid sick or disability leave to recover from and provide compensation for the injuries that Plaintiff risks by performing this work for DoorDash. DoorDash's misclassification decision harms other Dashers in the same way.

77. Furthermore, DoorDash's misclassification of Dashers harms other workers in similar positions, such as drivers, cyclists, and deliverers who are misclassified as independent contractors by other delivery and rideshare companies, because it shapes the labor market, drives down wages and undermines workers' ability to make use of the important protections of federal and their state's labor laws.

78. DoorDash's misclassification also harms competitors that *do* play by the rules. "Employers who misclassify their workers avoid many of the costs of employment and thereby gain an unfair market advantage over their law-abiding competitors."[8] For example, San Francisco's Yellow, which hired drivers as "employees," went bankrupt in 2016, facing unfair competition from Uber and Lyft.

## COLLECTIVE ACTION ALLEGATIONS

79. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

80. Plaintiffs bring claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, on behalf of the following "Collective":

> All individuals who – while working for DoorDash – performed one or more
> deliveries during the Collective Liability Period and who subject to DoorDash's

---

[8] Christopher Buscaglia, *Crafting a Legislative Solution to the Economic Harm of Employee Misclassification*, 9 U.C. Davis Bus. L.J. 111, 112 (2009).

arbitration clause.

81. The Collective Liability Period covers three years before the filing of this action to the date of judgment.

82. Excluded from the Collective is Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

83. Plaintiffs reserve the right to amend the definition of the Collective if discovery and further investigation reveal that the Collective should be expanded, subdivided, or modified in any other way.

84. DoorDash is liable under FLSA for several violations, including failing to properly compensate Plaintiffs and the Collective. The FLSA claims in this lawsuit should be adjudicated as a collective action. Upon information and belief, there are many similarly situated DoorDash drivers who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join it. Those similarly situated drivers are known to DoorDash, are readily identifiable, and can be located through DoorDash's records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

85. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

86. Pursuant to Fed. R. Civ. P. 23, Plaintiffs assert claims on behalf of the following "Classes":

### California Class

All individuals who – while working for DoorDash in California – performed one or more deliveries during the California Liability Period and who are not subject to DoorDash's arbitration clause.

The California Liability Period covers four years before the filing of this action to the date of judgment.

**Illinois Class**

All individuals who – while working for DoorDash in Illinois – performed one or more deliveries within the Illinois Liability Period and who are not subject to DoorDash's arbitration clause.

The Illinois Liability Period covers three years before the filing of this action to the date of judgment.

**Massachusetts Class**

All individuals who – while working for DoorDash in Massachusetts – performed one or more deliveries during the Massachusetts Liability Period and who are not subject to DoorDash's arbitration clause.

The Massachusetts Liability Period covers three years before the filing of this action to the date of judgment.

87. Excluded from the Classes is Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Classes is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

88. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded, divided into subclasses, or modified in any other way.

89. Although the precise number of Class members is unknown and can only be determined through appropriate discovery, Plaintiffs are informed and believe that the proposed Class is so numerous that joinder of all members would be impracticable.

90. Questions of law and fact common to the putative Class exist that predominate over questions affecting only individual members, including inter alia:

    (A) Whether DoorDash drivers are "employees";

    (B) Whether Defendant intentionally misclassified drivers as "independent contractors";

    (C) Whether Defendant failed to pay drivers at the appropriate rates, including a guaranteed minimum wage and overtime compensation;

(D) Whether Defendant improperly enriched themselves with tips that customers left for drivers;

(E) Whether Defendant failed to reimburse drivers for business-related expenses, such as for gasoline, wear and tear on their vehicles, and costs of using their cell phones for work;

(F) Whether Defendant failed to pay DoorDash drivers for all hours worked, including hours spent waiting to be assigned an order;

(G) Whether Defendant provided adequate transparency to drivers about their pay model by furnishing itemized and accurate wage statements;

(H) Whether Defendant violated federal employment law under the FLSA, including 29 U.S.C. § 206;

(I) Whether Defendant violated the California Labor Code, including §§ 218.5, 218.6, 226, 226.3, 226.7, 226.8, 351, 510, 512, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2802, 2810.5, and the California Industrial Welfare Commission Wage Order No. 9-2001 ("Wage Order 9");

(J) Whether Defendant violated Illinois labor law, including 820 ILCS 105/4, 820 ILCS 105/4a, and 820 ILCS 115/9.5;

(K) Whether Defendant violated Massachusetts labor law, including M.G.L. ch. 149, § 148; M.G.L. ch. 149, § 152A; M.G.L. 151 §§ 1A, 1B; M.G.L. ch. 149, § 148, *et seq.*; M.G.L. 151 § 1, *et seq.*; 454 C.M.R. § 27.03, *et seq.*; and M.G.L. c. 151, § 20; and

(L) Whether Plaintiffs and the Classes are entitled to damages, and if so, in what amount.

91. Plaintiffs are members of the putative Classes. The claims asserted by the Plaintiffs in this action are typical of the claims of the members of the putative Classes, as the claims arise from the same course of conduct by the Defendant and the relief sought is common.

92. Plaintiffs will fairly and adequately represent and protect the interests of the members of the putative Classes, as their interests are coincident with, not antagonistic to, the other

members of the Classes.

93. Plaintiffs have retained counsel competent and experienced in both employment and class action litigation. Plaintiffs' counsel specifically has experience litigating some of the largest and most complex employment class actions, including numerous consumer class actions in the Northern District of California.

94. Certification of the Classes is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to the respective members of the Classes predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action it would be highly unlikely that Class members would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.

95. A class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

96. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of the class action.

## **FIRST CLAIM FOR RELIEF**

### **Federal Minimum Wage**

(*on behalf of Plaintiffs and the Collective*)

97. Plaintiffs reallege and incorporate by reference all other paragraphs as if they were set forth again herein.

98. Under federal law, DoorDash owes its delivery-driver employees a guaranteed minimum wage. The Fair Labor Standards Act (FLSA) requires DoorDash to pay its drivers at

least $7.25 for each hour of work.

99. DoorDash has not paid Plaintiffs and the Collective at the required rate for all hours worked.

100. In particular, although the federal minimum wage is $7.25, Plaintiffs have earned less than the minimum wage in certain weeks due to DoorDash's low pay, coupled with the significant deductions from his pay that DoorDash requires him to make for expenses (e.g., gasoline, car insurance, car financing, maintenance, and cell phone usage). These expenses have resulted in hourly rates below $7.25 based on the hours that Plaintiffs have worked, the expenses they have incurred (e.g., the miles they have driven), and the wages that DoorDash has paid them. Further, although DoorDash has suffered or permitted Plaintiffs to log on to the DoorDash App and make themselves available to make deliveries, DoorDash has failed to pay them while they were logged on but not picking up or making a delivery. In this way, DoorDash has failed to pay the minimum wage for all hours actually worked and instead has limited Plaintiffs' pay to a piece rate for each delivery.

101. Even using DoorDash's own measurement of hours worked, Plaintiffs did not earn minimum wage for any work week, after accounting for business expenses.

102. **Plaintiff Clifford Linn**. The Dasher App reported that from October 28, 2019, to November 3, 2019 ("Week One"), Plaintiff Linn was paid $554.18 and worked 47.9 hours; and from November 11, 2019, to November 17, 2019 ("Week Two"), Plaintiff was paid $637.16 and worked 55.8 hours.

103. Plaintiff Linn estimates he drove approximately 550 miles during Week One and 650 miles during Week Two. At the 2019 IRS mileage reimbursement rate of $0.58 per mile, Plaintiff incurred approximately $319 and $377 in expenses during Weeks One and Two, respectively. Thus, accounting for mileage costs, Plaintiff's net hourly income was less than the federal minimum wage for Week One [specifically, ($554.18 - $319) ÷ 47.9 hours = $4.91 per hour] and Week Two [specifically, ($637.16 - $377) ÷ 55.8 hours = $4.66 per hour]. Plaintiff is informed and believes that additional information about his miles and actual hours worked is within DoorDash's custody or control.

104. **Plaintiff Baxter Gipson.** The Dasher App reported that from November 18, 2019, to November 24, 2019 ("Week One"), Plaintiff Gipson was paid $458.40 and worked 48.2 hours; and from December 16, 2019, to December 22, 2019 ("Week Two"), Plaintiff was paid $459.17 and worked 46.1 hours.

105. Plaintiff Gipson estimates he drives approximately 400 miles per week. At the 2019 IRS mileage reimbursement rate of $0.58 per mile, Plaintiff incurred approximately $232 per week in driving expenses. Thus, accounting for mileage costs, Plaintiff's net hourly income was less than the federal minimum wage for Week One [specifically, ($458.40 - $232) ÷ 48.2 hours = $4.70 per hour] and Week Two [specifically, ($459.17 - $232) ÷ 46.1 = $4.93 per hour]. Plaintiff is informed and believes that additional information about his miles and actual hours worked is within DoorDash's custody or control.

106. **Plaintiff John Gregorio.** The Dash App reported that from January 6, 2020, to January 12, 2020 ("Week One"), Plaintiff Gregorio was paid $646.48 and worked 40.6 hours; and from January 13, 2020, to January 19, 2020 ("Week Two"), Plaintiff was paid $529.86 and worked 34.3 hours.

107. Plaintiff Gregorio estimates that he drove 1,126 miles during Week One and 1,021 miles during Week Two. At the 2020 IRS mileage reimbursement rate of $0.575 per mile, Plaintiff incurred approximately $647.45 and $587.08 in driving expenses during Weeks One and Two, respectively. Thus, accounting for mileage costs, Plaintiff 's net hourly income was less than the federal minimum wage for Week One [specifically, ($646.48 - $647.45) ÷ 40.6 hours = -$0.02 per hour] and Week Two [specifically, ($529.86 - $587.08) ÷ 34.3 hours = -$1.67 per hour]. Plaintiff is informed and believes that additional information about his miles and actual hours worked is within DoorDash's custody or control.

108. Plaintiffs' hourly wages for this period were even lower after accounting for other business expenses and "reporting" time or "on-call" time, which Plaintiffs spent driving to a waiting area ("Hot Spot") designated by DoorDash and waiting for DoorDash to assign them an order. Plaintiffs sometimes spent hours waiting to be assigned an order. Plaintiffs are informed and believe that more specific information about how long he spent "on-call" is within

DoorDash's custody or control, because the Dasher App receives that information.

109. Plaintiffs could not take care of personal business during this "on-call" time because they had to be ready, at a moment's notice, to accept an order or risk lowering his metrics and potentially being terminated from the App, and because they had to wait at the specified Hot Spot near popular restaurants that DoorDash predicted would receive an order soon. Plaintiffs were not able to leave and were not near their homes, so they could not do personal errands.

110. Although Plaintiffs periodically did not earn at least the minimum wage, DoorDash had a policy and practice of failing and refusing to pay them minimum wage for all hours worked and thus violated and continues to violate the above-referenced minimum wage protections.

111. Plaintiffs seek the amount of the respective unpaid wages owed them, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. §§ 201 *et seq*. and such other legal and equitable relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### Federal Overtime

(*on behalf of Plaintiffs and the Collective*)

112. Plaintiffs reallege and incorporate by reference all other paragraphs as if they were set forth again herein.

113. Under federal law, DoorDash owes its delivery-driver employees overtime compensation for all time worked in excess of 40 hours per week.

114. DoorDash has failed to compensate its workers for overtime, as required by the Fair Labor Standards Act, 29 U.S. Code § 207, at a rate of 1.5 times their regular rate of pay.

115. Specifically, for example, DoorDash failed to pay Plaintiff Linn 7.9 hours of overtime for Week One (i.e., 47.9 hours - 40 hours) and 15.8 hours of overtime for Week Two (i.e., 55.8 hours - 40 hours); Plaintiff Gipson 8.2 hours of overtime for Week One (i.e., 48.2 hours – 40 hours) and 6.1 hours of overtime for Week Two (i.e., 46.1 hours – 40 hours); and Plaintiff Gregorio 0.6 hour of overtime for Week One (i.e., 40.6 hours – 40 hours).

116. DoorDash has a policy and practice of failing and refusing to pay overtime and thus

violated and continues to violate the above-referenced overtime protections.

117. Plaintiffs seek the amount of the respective unpaid overtime wages owed them, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. §§ 201 *et seq.* and such other legal and equitable relief as the Court deems just and proper.

### THIRD CLAIM FOR RELIEF

### California Minimum Wage

(*on behalf of the California Plaintiff and California Class*)

118. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

119. Under California law, DoorDash owes its delivery-driver employees a guaranteed minimum wage, pursuant to California Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 9.

120. DoorDash failed to pay its California drivers the legally required minimum wage for all hours worked.

121. As a result of this failure, the California Plaintiff and California Class are entitled to recover unpaid wages, interest, liquidated damages, costs, and attorneys' fees.

### FOURTH CLAIM FOR RELIEF

### California Overtime

(*on behalf of the California Plaintiff and California Class*)

122. Plaintiffs realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

123. Under California law, DoorDash owes its delivery-driver employees overtime compensation for all time worked in excess of 8 hours per day or 40 hours per week, and any hours worked on a 7th consecutive workday, pursuant to California Labor § 510(a) and Wage Order 9.

124. DoorDash has failed to compensate its California drivers for overtime, at the rates required by California law.

125. As a result of this failure, the California Plaintiff and California Class are entitled to

recover unpaid wages, interest, liquidated damages, costs, and attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### California Itemized and Accurate Wage Statements

(*on behalf of the California Plaintiff and California Class*)

126. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

127. Under California law, DoorDash must provide its delivery-driver employees with accurate and itemized wage statements, which include information about: (1) all wages earned, (2) all hours worked, (3) all applicable piece-rates and hours worked at each piece-rate, (4) all deductions made from wages, (5) net wages after deductions, (6) the relevant pay period, (7) the worker's name and their employer identification number or last four digits of their Social Security number, (8) name and address of the legal entity that officially employs the worker, and (9) all applicable hourly rates and hours worked at each hourly rate.

128. DoorDash has failed to provide accurate and itemized paystubs to its California drivers, as required by California Labor Code § 226 and Wage Order 9.

129. When paying its drivers, DoorDash failed to provide the transparency required by California law because it did not furnish paystubs to clearly and accurately disclose to its drivers, among other things: all hours worked; all applicable rates at which they were paid; the extent to which tips affected these pay rates; the total hours worked at each applicable pay rate; the worker's name and identification number; and the legal entity that is officially employing drivers.

130. To the extent that DoorDash lists total hours worked, this information does not constitute an *accurate* wage statement because it does not include "reporting" time, when drivers reported for work but were not immediately assigned to a delivery. In many cases, DoorDash instructed drivers to relocate to a different location to await orders, but DoorDash did not include time spent driving to a new location within total hours worked.

131. The California Plaintiff was harmed by DoorDash's lack of transparency in its wage statements because, among other things, he was unable to determine precisely how he was being

compensated and whether it was worth his time to continue working for DoorDash; was unable to determine whether he was receiving all their tips, a subject of much public controversy; and was not provided important information to protect his legal rights, such as the legal entity that officially employed him.

132. At all times relevant herein, DoorDash has failed to maintain accurate records of hours worked by Plaintiff as required under Wage Order 9 and Labor Code § 1174(d).

133. Plaintiff seeks the amounts provided under Wage Order 9 and Labor Code sections 226(e), 226.3, and 1174(d), as well as interest, costs, and attorneys' fees.

## SIXTH CLAIM FOR RELIEF

### California Meal and Rest Breaks

(*on behalf of the California Plaintiff and California Class*)

134. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

135. At all relevant times, Defendant has been an employer and Plaintiff has been an employee under California law entitled to the protections of the California Labor Code and Wage Order 9.

136. California Plaintiff and class members regularly worked in excess of five-hour shifts without being afforded at least a half-hour meal break in which they relieved of all duty, as required by Labor Code sections 226.7 and 512 and Wage Order No. 9, Section 11.

137. In addition, California Plaintiff and class members regularly worked without being afforded at least one ten-minute rest break, in which they were relieved of all duty, per four hours of work performed or major fraction thereof, as required by Labor Code section 226.7 and Wage Order 9, Section 12.

138. As a result of Defendant's failure to afford proper meal periods, it is liable to California Plaintiff and class members for one hour of additional pay at the regular rate of compensation for each workday that the proper meal periods were not provided, pursuant to Labor Code section 226.7 and Wage Order No. 9.

139. As a result of Defendant's failure to afford proper rest periods, it is liable to

California Plaintiff and class members for one hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not provided, pursuant to Labor Code § 226.7 and Wage Order No. 9, interest, costs, and attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**

**California Business Expense Reimbursement**

(*on behalf of the California Plaintiff and California Class*)

140. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

141. California Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

142. Defendant failed to indemnify and reimburse California drivers for necessary expenditures they incurred as a direct result of the duties they performed for the Defendant's benefit and/or at the Defendant's direction, including costs of gasoline, car insurance, car maintenance, depreciation and repairs, and cell phone usage that was necessary to perform the work.

143. Wage Order 9 provides that "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer."

144. Defendant failed to provide and maintain tools and equipment that Plaintiff and class members required to perform their duties, including a vehicle, gasoline, car insurance, reimbursement for car maintenance, depreciation, and repairs, and cell phone usage.

145. As a result, the California Plaintiff and class members seek unreimbursed expenses, penalties, interest, costs incurred, and attorneys' fees pursuant to Labor Code § 2802(b) and Wage Order 9.

**EIGHTH CLAIM FOR RELIEF**

**California Tips**

(*on behalf of the California Plaintiff and California Class*)

146. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

147. DoorDash often keeps drivers' tips in order to defray its costs. This violates Cal. Labor Code § 351: "No employer or agent shall . . . deduct any amount from wages due an employee on account of a gratuity[.]" Under California law, DoorDash must pay its workers all tips they earn, in addition to minimum wage.

148. Further, Defendant misappropriated drivers' tips through DoorDash's "Drive" program.  Under this program, certain restaurants, caterers, and grocery chains have a deal with DoorDash, under which they can request Dashers to make a particular delivery for them.

149. The restaurant, caterer, or grocer must pay the Dasher.  In turn, the Dasher must collect payment from the customer.  The customer's payment goes in its entirety to the restaurant, caterer, or grocer.  DoorDash's policy and practice does not require the restaurant, caterer, or grocer to pass on tips to the driver.  Certain restaurants and grocery chains, such as Chipotle and Walmart, are notorious for not passing on tips to their DoorDash drivers.

150. As a result of Defendant's failure to pass on all tips, the California Plaintiff and California Class are entitled to recover unpaid tips, interest, liquidated damages, costs, and attorneys' fees.

### NINTH CLAIM FOR RELIEF

**California Unfair Business Practices**

(*on behalf of the California Plaintiff and California Class*)

151. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

152. At all relevant times, Defendant has been an employer and California Plaintiff and class members have been employees under California law, entitled to the protections of the California Labor Code and Wage Order 9.

153. The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*.  Section 17200 of the Cal. Bus. & Prof. Code prohibits unfair competition by prohibiting, inter alia, any unlawful or unfair business acts or

1   practices.

2          154. Within the four years before the filing of this action, Defendant committed, and

3   continues to commit, acts of unfair competition, as defined by the UCL, by, among other things,

4   engaging in the acts and practices described herein.  Defendant's conduct as herein alleged has

5   injured California Plaintiff and class members by wrongfully denying them of their earned

6   wages, and therefore was substantially injurious to them.

7          155. Defendant engaged in unfair competition in violation of the UCL by violating, inter

8   alia, each of the following laws.  Each of these violations constitutes an independent and separate

9   violation of the UCL:

10         a.   Wage Order 9;

11         b.   Labor Code § 226.8, which makes it unlawful for employers to willfully

12              misclassify workers as independent contractors, and to charge an individual

13              who has been willfully misclassified as an independent contractor a fee, or

14              make any deductions from compensation, for any purpose including for goods,

15              materials, services, licenses, repairs, equipment maintenance, or fines arising

16              from the individual's employment where any of the acts described would have

17              violated the law if the individual had not been misclassified;

18         c.   Labor Code §§ 221 and 2802;

19         d.   Labor Code §§ 1182.2, 1194, 1194.2, 1197, 1197.1, 1199;

20         e.   Labor Code §§ 226, 353, and 1174;

21         f.   Labor Code §§ 226.7, 512;

22         g.   Labor Code § 2810.5;

23         h.   Labor Code §§ 201, 202, 203, 226, 226.7, and 512;

24         i.   Labor Code § 351, which makes it unlawful for an employer to deduct any

25              amount from wages due an employee on account of gratuity.

26         156. Defendant has not paid California drivers all the tips they received from customers,

27   even though they are entitled to these tips, in addition to minimum wage.

28         157. Defendant's course of conduct, acts, and practices in violation of the California laws

mentioned above constitute a separate and independent violation of the UCL.

158. Defendant's conduct described herein also violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

159. Defendant's conduct is additionally unfair because the harm from the conduct alleged herein vastly outweighs the benefits. DoorDash, for example, misled customers into thinking that tips will increase their driver's earnings, when in reality, DoorDash used the tips to defray its labor costs.

160. As a direct and proximate result of Defendant's violations of the UCL, California Plaintiff and class members lost money or property, including but not limited to wages, expense reimbursements, penalties, and tips owed to them.

161. California Plaintiff and class members seeks restitution of all expenses, minimum wages, and other wages owed, plus attorneys' fees and costs pursuant to Cal. Code of Civil Procedure § 1021.5.

**TENTH CLAIM FOR RELIEF**

**Illinois Minimum Wage**

(*on behalf of the Illinois Plaintiff and Illinois Class*)

162. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

163. Under Illinois law, DoorDash owes its delivery-driver employees a guaranteed minimum wage, pursuant to 820 ILCS 105/4.

164. DoorDash failed to pay its Illinois drivers the legally required minimum wage for all hours worked.

165. As a result of this failure, the Illinois Plaintiff and Illinois Class are entitled to recover unpaid wages, interest, liquidated damages, costs, and attorneys' fees.

**ELEVENTH CLAIM FOR RELIEF**

**Illinois Overtime**

(*on behalf of the Illinois Plaintiff and Illinois Class*)

166. Plaintiff realleges and incorporates by reference all other paragraphs as if they were

set forth again herein.

167. Under Illinois law, DoorDash owes its delivery-driver employees overtime compensation for all time worked in excess of 40 hours per week, pursuant to 820 ILCS 105/4a.

168. DoorDash has failed to compensate its Illinois drivers for overtime, at the rates required by Illinois law.

169. As a result of this failure, the Illinois Plaintiff and Illinois Class are entitled to recover unpaid wages, interest, liquidated damages, costs, and attorneys' fees.

**TWELFTH CLAIM FOR RELIEF**

**Illinois Business Expense Reimbursement**

(*on behalf of the Illinois Plaintiff and Illinois Class*)

170. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

171. Illinois law, pursuant to 820 ILCS 115/9.5, requires that "[a]n employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee" for anything that is "directly related to services performed for the employer."

172. Defendant failed to indemnify and reimburse Illinois drivers for necessary expenditures they incurred as a direct result of the duties they performed for the Defendant's primary benefit and/or at the Defendant's direction, including costs of gasoline, car insurance, car maintenance, depreciation and repairs, and cell phone usage that was necessary to perform the work.

173. As a result, the Illinois Plaintiff and the Illinois Class seek unreimbursed expenses, penalties, interest, costs incurred, and attorneys' fees.

**THIRTEENTH CLAIM FOR RELIEF**

**Massachusetts Minimum Wage**

(*on behalf of the Massachusetts Plaintiff and Massachusetts Class*)

174. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

175. Under Massachusetts law, DoorDash owes its delivery-driver employees a

guaranteed minimum wage, pursuant to M.G.L. ch. 149, § 148, *et seq.*; M.G.L. 151 § 1, *et seq.*; 454 C.M.R. § 27.03, *et seq.*; and M.G.L. c. 151, § 20.

176. DoorDash failed to pay its Massachusetts drivers the legally required minimum wage for all hours worked.

177. As a result of this failure, the Massachusetts Plaintiff and Massachusetts Class are entitled to recover unpaid wages, interest, liquidated damages, costs, and attorneys' fees.

## FOURTEENTH CLAIM FOR RELIEF

### Massachusetts Overtime

(*on behalf of the Massachusetts Plaintiff and Massachusetts Class*)

178. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

179. Under Massachusetts law, DoorDash owes its delivery-driver employees overtime compensation for all time worked in excess of 40 hours per week, pursuant to M.G.L. 151 §§ 1A, 1B.

180. DoorDash has failed to compensate its Massachusetts drivers for overtime, at the rates required by Massachusetts law.

181. As a result of this failure, the Massachusetts Plaintiff and Massachusetts Class are entitled to recover unpaid wages, interest, liquidated damages, costs, and attorneys' fees.

## FIFTEENTH CLAIM FOR RELIEF

### Massachusetts Business Expense Reimbursement

(*on behalf of the Massachusetts Plaintiff and Massachusetts Class*)

182. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

183. Massachusetts law, pursuant to M.G.L. ch. 149, § 148, *et seq*, is clear that "an employer cannot effectively reduce an employee's wages by shifting business costs to the employee." *Martins v. 3PD Inc*., No. CIV.A. 11-11313-DPW, 2014 WL 1271761, at *6 (D. Mass. Mar. 27, 2014).

184. Defendant failed to indemnify and reimburse Massachusetts drivers for necessary

expenditures they incurred as a direct result of the duties they performed for the Defendant's benefit and/or at the Defendant's direction, including costs of gasoline, car insurance, car maintenance, depreciation and repairs, and cell phone usage that was necessary to perform the work. Defendant's effectively reduced Massachusetts drivers' wages by shifting these business costs to them.

185. As a result, the Massachusetts Plaintiff and the Massachusetts Class seek unreimbursed expenses, liquidated damages, interest, costs, and attorneys' fees.

### SIXTEENTH CLAIM FOR RELIEF

#### Massachusetts Tips

(*on behalf of the Massachusetts Plaintiff and Massachusetts Class*)

186. Plaintiff realleges and incorporates by reference all other paragraphs as if they were fully set forth herein.

187. Under Massachusetts law, pursuant to M.G.L. ch. 149, § 152A, a company must give service employees all tips left for them by customers. The statute imposes "strict civil liability" on an employer if its delivery drivers do not receive their tips. *Mooney v. Domino's Pizza, Inc.*, No. 1:14-CV-13723-IT, 2016 WL 4576996, at *4 (D. Mass. Sept. 1, 2016). Employers may not retain any part of tips left for employees and may not require deductions from tips that would reduce employees' overall wages. M.G.L. ch. 149, § 152A(b).

188. DoorDash retained part or all of its Massachusetts drivers' tips to offset its own costs, rather than remitting tips to increase drivers' overall pay. DoorDash "Drive" partners kept all or part of Massachusetts' drivers' tips to enrich the corporation, rather than the drivers.

189. As a result, the Massachusetts Plaintiff and the Massachusetts Class seek unreimbursed expenses, liquidated damages, interest, costs, and attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.    An Order certifying this action as a collective and class action, and appointing Plaintiffs as collective and class representatives and Plaintiffs' counsel as counsel for the collective and the classes;

B.      A declaratory judgment that the practices complained of herein are unlawful and that Plaintiffs and Class members are "employees" under federal, California, Illinois, and Massachusetts law;

C.      An injunction against Defendant, its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices set forth herein;

D.      Statutory penalties and liquidated damages;

E.      An award of damages and restitution to be paid by Defendant according to proof;

F.      Pre-judgment and post-judgment interest, as provided by law;

G.      Such other injunctive and equitable relief as is just and proper;

H.      Reasonable service awards for the collective and class representatives; and

I.      Reasonable costs, and attorneys' fees.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury for all issues so triable.

Dated:  January 29, 2020                     Respectfully submitted,

By:    /s/ Steven M. Tindall

Steven M. Tindall (Cal. Bar No. 187862)
Aaron Blumenthal (Cal. Bar No. 310605)
Nikul Shah (Cal. Bar No. 321282)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: 510-350-9700
Fascimile: 510-350-9701
E-Mail: smt@classlawgroup.com
E-Mail: ab@classlawgroup.com
E-Mail: ns@classlawgroup.com

CLASS ACTION COMPLAINT

Jahan Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
Molly Frandsen (Cal. Bar No. 320094)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA  94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: jsagafi@outtengolden.com
E-Mail: rsun@outtengolden.com
E-Mail: mfrandsen@outtengolden.com

*Attorneys for Plaintiffs and the Proposed Class*